

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHERYL RUDOLPH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| KELLY AEROSPACE POWER ) | |
| SYSTEMS ) | CIVIL ACTION NO.: 2:05-cv-664-T |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S MEMORANDUM OF FACT AND LAW IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Cheryl Rudolph, and submits this memorandum in support of her Response to Defendants' Motion for Summary Judgment.

## I. INTRODUCTION

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and 42 U. S. C. Section 1981, as both were amended by the Civil Rights Act of 1991. Plaintiff is seeking principally declaratory and injunctive relief, reinstatement, back pay, compensatory and punitive damages, and other relief to redress discrimination in employment on the basis of race.

Plaintiff Rudolph filed a Charge of Discrimination with the Equal Employment Opportunity Commission's Regional Office in Birmingham, Alabama. She subsequently received a Notice of Rights letter, and filed this complaint within ninety (90) days of her receipt of said notice and has therefore exhausted her administrative remedies.

## II. STATEMENT OF THE FACTS

Plaintiff, Cheryl Rudolph, is an African American Female, and at the time of the filing of this

complaint was a resident citizen of Lowdnes County, Alabama. (See Exhibit A, Plaintiff's Complaint.) She was hired to work for Defendant, Kelly Aerospace Power Systems, Inc., (Hereinafter referred to as Kelly Aerospace) in the shipping department, on November 11, 2003 at the rate of $7.00 per hour. (See Exhibit B, Kelly Aerospace Payroll Change Notice for Cheryl Rudolph.) On November 12, 2003, one day after Rudolph was hired, Renee Branum, a white female, was hired by Kelly Aerospace in the same department as Rudolph to perform the same job functions as Rudolph. Branum was hired at the rate of $8.00 per hour. (See Exhibit C, Kelly Aerospace Payroll Change Notice for Renee Branum.)

Prior to Rudolph being hired at Kelly Aerospace, she had worked at Liz Claiborne in the quality control department. She inspected garments for damage; and performed functions in shipping and stocking of items in the warehouse. She worked there for seven years. (See Exhibit D, Rudolph Application for Employment) Prior to that job she work at EJ's Mobile Homes Parts and Service where she shipped and received parts for the company for some nine (9) months. (See Exhibit D, Rudolph Application for Employment) When Rudolph presented to Kelly for employment her prior highest wage in the area for which she had experience in shipping, stocking and receiving had been $10.87 per hour. (See Exhibit D, Rudolph Application for Employment)

Prior to Renee Branum working for Kelly Aerospace her last employment at Subway had earned her only $5.50 per hour. (See Exhibit E, Branum Application for Employment) She had worked on that job from March, 2003 until the date of her application with Kelly Aerospace which was September 25, 2003, less than one year. (See Exhibit E, Branum Application for Employment)

On December 15, 2003 after being hired in the shipping department, Rudolph and Branum were moved to the stock room. (See Exhibit F, Kelly Aerospace Payroll Change Notice for Rudolph

and Branum.) No reason was given to Rudolph for the move but that there was a need for help in the stock room. (See Exhibit H, Deposition of Rudolph, Pg. 87:5-10, and Exhibit G, Affidavit of Rudolph..) Steve Miller then became Rudolph's and Branum's supervisor. (See Exhibit H, Deposition of Rudolph, Pg.93:20-23) When Rudolph first began working in the stock room her supervisor, Steve Miller did not explain the job or show Rudolph what she was to do. (See Exhibit G, Affidavit of Rudolph) Miller did however, train Branum and help her to perform her job duties on a regular basis. (See Exhibit G, Affidavit of Rudolph). Branum could make mistakes and Miller would correct them, or he would just do the job for Branum. He did not tell Rudolph if she was making any mistakes and he did not do her job for her. (See Exhibit G, Affidavit of Rudolph)

Sometime after Rudolph began work at Kelly Aerospace she became aware that she was being paid less than Renee Branum. (See Exhibit G, Affidavit of Rudolph) After learning this fact, Rudolph complained to management and informed them of the same. (See Exhibit H, Deposition of Rudolph, Pg.108:18-23 and 109:1-6.) Subsequently, on February 6, 2004, five days before her probationary period was to end, Rudolph was terminated from her job with Kelly Aerospace. This was the first time Rudolph learned that management allegedly questioned her performance. (See Exhibit G, Affidavit of Rudolph)

### III. STANDARD OF REVIEW

Summary Judgment is appropriate where "there is no genuine issues as to a material fact and ... the moving party is entitled to judgment as a matter of law, *Rule 56(c) of the Federal Rules of Civil Procedure*. The initial burden of proof lies with the moving party. The moving party must identify and demonstrate that there is no genuine issue of a material fact. The burden then shifts to the non-movant who must then produce certain facts and or evidence that there is some genuine issue of a

material fact. A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the pleading, depositions answers to interrogatories, and admission, and affidavits which it believes demonstrated the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), 91 L.Ed. 2d. 265 (1986), citing, Fed. Rules Civ. Proc. Rule 56(c).

A fact is material if, under applicable substantive law, it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d. 202 (1986). It is genuine if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Tipton v. Bergrohr GMBH-Siegen*, 965 F. 2d 994, 998 (11th Cir. 1992). This Court considers the evidence and all inferences drawn in the light most favorable to the non-moving party. *Earley v. Champion Int'l Corp.*, 907 F. 2d 1077, 1080 (11th Cir. 1990). Further, Summary Judgment would not be appropriate where there is non action on the part of a Defendant who was aware of Plaintiff's assertions of discrimination, or should have known about the racial discrimination.

"The court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial." <u>Anderson</u> at 249. All inferences are to be drawn in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

"If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F. 2d 1518, 1534 (11th Cir. 1992), citing, *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F. 2d 838, 841 (11th Cir. 1985).

Kelly Aerospace bears the burden of demonstrating that there is no dispute as to any material fact in the case. *Warrior Tombigbee Transp. Co. v. M/V/ Nan Fung*, 695 F. 2d 1294 (11th Cir. 1983). Rudolph proffers that Kelly Aerospace has not met its burden. The evidence demonstrates that there are disputes as to material facts in this case as is set out below.

## IV. ARGUMENT

The Civil Rights Act of 1964, as amended in 1991, provides that it is "an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." *42 U.S. C. §2000e-2(a)(1).* To prove discriminatory treatment violating Title VII a plaintiff must first establish a prima facie case of discrimination. *Contu v. Martin County Board of County Commissioners,* 47 F. 3d 1068, 1073 (11th Cir. 1995). Once a prima facie case has been established, there is an inference that the employer acted with a discriminatory motive, and the respondent may rebut the evidence by articulating a legitimate nondiscriminatory reason for the action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Plaintiff has presented a prima facie case of race discrimination.

In this action, Rudolph is a racial minority, as she is African American. She was paid at a rate of pay less than the white female, Renee Branum, who was hired to perform the same job as Rudolph. The white female was treated more favorably than Rudolph, and Rudolph was subsequently terminated from her employment with Defendant, while the white female was allowed to remain in the employment of Kelly Aerospace. Rudolph was qualified for the position which she held.

Once a prima facie case has been established, there is an inference that the employer acted with a discriminatory motive, and the respondent may rebut the evidence by articulating a legitimate nondiscriminatory reason for the action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Plaintiff establishes a prima facie case. 1) As an African-American female, Rudolph belongs to the protected class for race; 2) Rudolph was terminated from her position as a Stock Clerk with Kelly Aerospace on February 6, 2004; 3) Kelly Aerospace, treats similarly situated employees outside Plaintiff's classification more favorably; Renee Branum was treated more favorably than Rudolph.; and, 4) Cheryl Rudolph is qualified for the job.

### Preferential Treatment Given to Caucasian at Kelly Aerospace

Plaintiff establishes a prima facie case of race discrimination by showing that Branum, an employee outside her protected class receive preferential treatment.

In the instant case, Rudolph was not trained by her supervisor in the stock room to perform her job. (See Exhibit G, Affidavit of Rudolph). She was not assisted in the performance of her duties by the Supervisor. (See Exhibit G, Affidavit of Rudolph). And Rudolph was not told that she was not performing her job properly. (See Exhibit G, Affidavit of Rudolph). Branum was trained by the supervisor. (See Exhibit G, Affidavit of Rudolph). The supervisor assisted her daily to perform her job, and on occasion was helped by David Nordgren. (See Exhibit G, Affidavit of Rudolph). On at least one occasion Barnum did not show up for work and did not call in. Miller pulled her parts that day. (See Exhibit G, Affidavit of Rudolph). He did not do the same for Rudolph when she was away from work. (See Exhibit G, Affidavit of Rudolph). Branum would make mistakes and Miller corrected them for her. Rudolph would ask for help and was ignored. She

was informed by Miller that her job was hers and she should get it done. (See Exhibit G, Affidavit of Rudolph). Rudolph was heard by one former employee of Kelly Aerospace, Jessie McMeans to exclaim that she (Rudolph) wished her supervisors would help her like they helped Branum to perform her job. (See Exhibit I, Affidavit of Jessie McMeans). Barnum was also observed as not having to work as hard as Rudolph, and that Branum often had assistance performing her job. (See Exhibit I, Affidavit of Jessie McMeans). Branum clearly received preferential treatment from management.

Rudolph has established a prima facie case of discrimination. Plaintiff asserts that she is a member of the protected class; that she was treated less favorably than Branum in the performance of her duties, and was ultimately terminated from her employment with Defendant as a result of discriminatory practices.

## Burden-shifting Analysis and Pretext

In Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L.Ed. 207 (1981), the Supreme Court summarized the familiar burden-shifting order of proof in discrimination cases:

First, the Plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry the burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Plaintiff has submitted sufficient evidence that she suffered an adverse employment action,

was qualified for the position, and different treatment was given to a Caucasian employee who required assistance in the performance of her daily job duties, and who was paid a higher wage than Rudolph to perform that job.(See Exhibit G, Affidavit of Rudolph, and Exhibit I, Affidavit of McMeans).

### Reasons Given for Plaintiff's Termination Are Pretext for Violation of Title VII

Rudolph's submissions are evidence of pretext. Branum who receives help to perform her job on a daily basis, is allowed to call off work without incident and who did not work as hard as Rudolph is allowed to continue her employment with Kelly Aerospace, while Rudolph who performed independently and to the best of her ability was terminated allegedly for poor job performance. Rudolph is then terminated after she complained to management about Branum making more money to perform the same job. (See Exhibit G, Affidavit of Rudolph, and Exhibit I, Affidavit of McMeans).

The Eleventh Circuit has held that pretext was shown where black employees were fired for excessive absences while white employees were only suspended for three days. *Billingsley v. Jefferson County*, 953 F. 2d 1351 (11th Cir. 1992). In the case at bar Rudolph was terminated for allegedly poor performance, while Branum was helped, trained, paid a higher wage, and allowed to violate company policy as it relates to calling off, all without incident. Further, Rudolph's termination occurs after she complained to management about Branum having a higher wage than she to perform the same job.

### V. CONCLUSION

There are genuine issues of material fact for a jury to determine in this case. Plaintiff Cheryl Rudolph respectfully requests that this Honorable Court deny the Defendant's Motion for

Summary Judgment.

Janice Spears-Turk (ASB2195R69J)
Kathryn Dickey (ASB8797D57K)

OF COUNSEL:

LAW OFFICES OF J. D. SPEARS-TURK
2735 Office Park Circle
Montgomery, AL 36116
(334) 274-0-883

Kathryn Dickey
Attorney at Law
322 Alabama Street
Montgomery, AL 36104

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon counsel for Defendant by depositing a copy in the United States Mail, postage prepaid, on this the 6th Day of March, 2006 and addressed to:

Charles B. Paterson
Kelly F. Pate
Balch & Bingham, LLP
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104

Alan Rauss
Korhman, Jackson & Krantz
One Cleveland Center, 20th Floor
Cleveland, OH 44114


_____
OF COUNSEL